IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LAND TEJAS SPRING TRAILS LTD | § | CASE NO. 11-34325-KKB |
| | § | CHAPTER 11 |
| | § | |
| DEBTOR | § | |

**BENCH BRIEF IN SUPPORT OF MOTION TO RECONSIDER ORDER CONVERTING CASE [DOCKET NO. 19] AND LIMITED OBJECTION TO <u>DEBTOR'S APPLICATION TO EMPLOY [DOCKET NO. 18]</u>**

TO THE HONORABLE KAREN BROWN,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW **Forestar (USA) Real Estate Group, Inc**. ("**Forestar**"), a secured creditor of the Debtor, and files this its Bench Brief in Support of its Motion to Reconsider Order Converting Case [Docket No. 19] and Limited Objection to Debtor's Application to Employ [Docket No. 18].

### I. INTRODUCTION

1. This case was commenced as an involuntary chapter 7, following the filing of a petition on May 18, 2011 (the "Petition Date"), by three alleged petitioning creditors. On June 14, 2011, Nelson Hensley, purportedly acting as the attorney for the Debtor, filed an answer, consent to and request for entry of order for relief, and a motion to convert. On June 17, 2011, the Court entered an Order for Relief and converted the case to Chapter 11. On June 24, Mike Casey, as "Manager Discovery G.P. of Land Tejas Spring Trails, Ltd.," filed a Application to Employ Hensley & Krueger as counsel for the Debtor.

4578598.1
55890.15

2. Forestar is the major secured creditor of the Debtor. As of the Petition Date (and all times beyond), the Debtor was in default under its obligations to Forestar and was facing an eventual foreclosure. As of the Petition Date, the Debtor owed in excess of $33,000,000.00 to Forestar.

3. Forestar contends that the Debtor did not have authority to answer the involuntary petition, consent to an order for relief, request that the case be converted to chapter 11, or to employ bankruptcy counsel. Therefore, Forestar requests that the Court reconsider the order converting the case to chapter 11 and re-convert the case to chapter 7. In addition. Forestar requests that the Court deny the Debtor's application to employ Hensley & Krueger.

## II.  THE LIMITED PARTNERSHIP

4. Land Tejas Spring Trails, Ltd. (the "Debtor" or "Partnership") is a Texas limited partnership formed pursuant to an Agreement of Limited Partnership (the "Agreement"), effective August 29, 2006, and organized as follows:

| | |
|---|---|
| General Partner: | Land Tejas Companies, Ltd. |
| Participating Limited Partners: | Courtney Grover<br>L.T. Partnership, Ltd. |
| Equity Group: | FFS Investments No. 21, Ltd. |
| Limited Partners: | Participating Limited Partners and Equity Group |

5. On or about May 24, 2011, the Equity Group purportedly removed Land Tejas Companies as the General Partner of the Partnership, and attempted to appoint Discovery Trails, LLC, as the substitute General Partner. Discovery Trails is a Texas limited liability company formed on May 10, 2011, and its manager is Mike Casey. No amended certificate of formation has been filed with the Texas Secretary of State indicating the change of the General Partner of the Partnership.

**A.     Withdrawal of General Partner and Reconstitution of Partnership**

6.      Sections 7.02(b) and (c) of the Agreement provide that if the Partnership is in default of any of its monetary obligations to the Equity Group or to any secured creditor, the Equity Group, after affording the Partnership 60 days to cure the default, may declare the General Partner to have resigned. The General Partner's interest then automatically converts to the interest of a Limited Partner.

7.      Removal of the General Partner under Section 7.02 is an event of withdrawal under Section 6.08. In the event of withdrawal of the General Partner under Section 6.08, the Partnership will dissolve pursuant to Section 12.01. Section 12.06 provides that all Limited Partners must vote to continue the Partnership within 90 days or the Partnership will terminate.

> **6.08 Withdrawal of General Partner**. The General Partner shall cease to be the General Partner upon the occurrence of any of the following events of withdrawal after 30 days written notice and opportunity to cure has been given to General Partner:
> (a)    the removal of the General Partner in accordance with Section 7.02 hereof;
>
> **7.02 Voting Rights of Limited Partners.** (c)If the Partnership becomes in default of any of its monetary obligations to any secured creditor, the Partnership, acting through the General Partner, shall immediately give written notice of such default to the Equity Group of such default, After the Equity Group has allowed the Partnership sixty (60) days from the date of such default to cure such default, the Equity Group may thereupon declare the General Partner to have resigned, in which event, the General Partner's interest in the Partnership shall convert to an interest of a Limited Partner, and a substituted General Partner may be elected under Section 12.06.
>
> **12.01. Dissolution Because of General Partners**. The Partnership will dissolve upon any event of withdrawal of the General Partner set forth in Section 6.08 hereof.
>
> **12.06 Reconstitution of the Partnership**. <u>Unless the holders of all of the Limited Partners interests</u> vote within 90 days of one of the events specified in Section 12.01 to continue the Partnership with a new General Partner, the Partnership will automatically terminate at the close of business on the 90th day. The new General Partner maybe appointed by the holders of a majority of the Limited Partners' initial Capital Account.

3

8. Withdrawal of the General Partner under Section 7.02 triggers a chain of events:

   (1) the Partnership dissolves,

   (2) the Partnership terminates at the close of business on the 90th day after withdrawal of General Partner UNLESS all limited partners vote to continue the business of the Partnership,

   (3) IF all limited partners vote to continue, then the holders of a majority of the Limited Partners' initial Capital Account may appoint a new General Partner.

   (4) If all Limited partners DO NOT vote to continue the Partnership, the Partnership terminates at the close of business on the 90th day, and a liquidator must be appointed to wind up the Partnership.

9. Therefore, the Equity Group may appoint a new General Partner, but only after all of the Limited Partners vote to continue the Partnership. Grover and LT Partnership (the Participating Limited Partners) did not vote to continue the business of the Partnership.

10. In the May 24, 2011 letter, the Equity Partner stated: "The General Partner hereby consents to the election of a substitute general partner pursuant to Section 12.06 of the Partnership Agreement." This statement, however, is without effect. There is nothing in the Agreement that (1) implies consent of the General Partner or (2) circumvents the requirement that the Participating Limited Partners must vote to continue the business before a substitute General Partner is appointed.

**B.    No Reconstitution Requires Liquidation**

11. If the Partnership is not reconstituted under Section 12.06, and the dissolution was caused by the default of the General Partner, Section 13.01 provides that a liquidator or liquidating committee selected by the holders of a majority of the Limited Partners' initial Capital Account will commence to wind up the affairs of the Partnership and to liquidate and sell its assets. If a liquidator is not appointed under Section 13.01 within 30 days of the event causing dissolution, Section 13.02 gives any interested party the right to make an application to the senior U.S. Federal District Judge for the Southern District of Texas for the appointment of such Liquidator.

> **12.07 Effect of Dissolution**. Upon dissolution of the Partnership, the affairs of the Partnership will be wound up in accordance with the provisions of Article XIII.

4

**13.01 Winding Up By the Liquidator.** If the Partnership is dissolved for any reason set forth in Article XI and is not reconstituted pursuant to Section 12.06, the General Partner will commence to wind up the affairs of the Partnership and to liquidate and sell its assets. In the event that the dissolution was caused by the bankruptcy or default of the General Partner, a liquidator or liquidating committee selected by the holders of a majority of the Limited Partners' initial Capital Account will commence to wind up the affairs of the Partnership and to liquidate and sell its assets. The term "Liquidator" refers to the General Partner, the liquidator, or the liquidating committee that will wind up and liquidate the Partnership. The Liquidator will have sufficient business expertise and competence to conduct the winding up and termination of the Partnership and, in the course thereof, to cause the Partnership to perform any contracts which its has previously or (subject to the limitations set forth herein) may subsequently enter. The Liquidator will proceed with the liquidation of the Partnership as expeditiously as is reasonably practicable.

**13.02 Appointment of Liquidator.** If the Partnership is dissolved and is not reconstituted pursuant to Section 12.06, and if within 30 days following the date of dissolution a Liquidator or successor Liquidator has not been appointed, any interested party will have the right to make application to the then senior U. S. Federal District Judge (in his individual and not judicial capacity) for the Southern District of Texas for the appointment of such Liquidator. Said Judge, acting in his individual and not judicial capacity, will be empowered to appoint and designate such Liquidator who will have all the powers, duties, rights, and authorities provided herein.

12. The Equity Group did not appoint a Liquidator in accordance with the Agreement.

### III. LEGAL ANALYSIS

13. According to the Agreement, the Partnership was formed pursuant to the Texas Revised Limited Partnership Act ("TRLPA"). However, the Texas Business Organizations Code ("TBOC") went into effect on January 1, 2006, and applied to entities formed after that date. As of January 1, 2010, the TBOC became applicable to all Texas entities, including limited partnerships formed under the TRLPA.

A.   **Authority to Act on Behalf of Partnership**

14.   The United States Supreme Court has held that the initiation of a bankruptcy case is left to those who have the power of management, which is determined by state law. *Price v. Gurney*, 324 U.S. 100 (1945).

15.   In *In re: Phillips*, the Fifth Circuit addressed the issue of whether a general partner of a dissolved Texas partnership had the authority to file a petition for relief under Chapter 11 on behalf of the partnership. *Phillips v. First City, Texas (In re Phillips)*, 966 F.2d 926 (5th Cir. 1992). The Court found that under Texas law, the general partner of the Debtor, who was himself a debtor in bankruptcy, did not have authority to file the petition on behalf of the partnership because Texas law provided that a "partnership is in no case bound by any act of a partner after dissolution . . . where the partner has become bankrupt." *Id.* at 929 (citing TEX. REV. CIV. STAT. ANN. art. 6132b § 35(3)(b)(Vernon 1970)). The Court concluded that the issues of authority and eligibility to file are determined by state law. *Id.* at 934.   Under Texas law, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners. TBOC §153.152.

16.   Bankruptcy cases in other jurisdictions with virtually identical facts as the present case have held that a limited partnership that had not been properly reconstituted upon the withdrawal of the general partner lacked authority to file a bankruptcy petition on behalf of the partnership. *See e.g., In re Hagerstown Fiber Ltd. P'ship.*, 1998 Bankr. LEXIS 1054 (Bankr. S.D.N.Y. 1998) (finding that substitute general partner of a limited partnership lacked authority to file a chapter 11 case on behalf of the limited partnership because it was not properly appointed as the new general partner); *In re: Telluride Income Growth, LP*, 311 B.R. 585 (Bankr. Colo. 2004) (holding that general partner, which was not properly elected under the terms of the partnership agreement, did not have authority to act on behalf of the partnership).

4578598.1
55890.15

**B.      Reconstitution Upon Withdrawal of the General Partner**

17.     "A person ceases to be a general partner of a limited partnership on the occurrence of one or more of the following events of withdrawal: . . . the general partner is removed as a general partner in accordance with the partnership agreement." TBOC §153.155(a)(3). If there are no remaining general partners following the withdrawal of a general partner, the partnership may be reconstituted. TBOC §153.158(c).

18.     An event of withdrawal of a general partner of a domestic limited partnership is an event requiring winding up under TBOC §11.051(4) unless otherwise provided by the partnership agreement. TBOC §11.058(b). The limited partnership may cancel an event requiring winding up arising from an event of withdrawal of a general partner as specified in Section 11.058(b) if, not later than one year after the event, <u>all remaining partners</u>, or another group or percentage of partners specified in the partnership agreement agree in writing to continue the business of the limited partnership and agree to the appointment of one or more new general partners. TBOC §153.501(b).

19.     The TRLPA differed from the TBOC in that TRLPA §8.01 permitted a partnership to stop a winding up that was triggered by the withdrawal of a general partner if within 90 days of the event of withdrawal, <u>all remaining partners</u> agreed in writing to continue the business of the limited partnership. Section 12.06 of the Agreement uses similar language. While the TBOC provides the partners one year to reconstitute the partnership, that term is modified by the Agreement, which provides 90 days in which <u>all limited partners</u> must vote to continue the business of the Partnership in order to avoid termination of the Partnership. Both the TRLPA and TBOC are clear that unless agreed otherwise in the partnership agreement, all remaining partners must vote to reconstitute the partnership. The Agreement here clearly follows the language of the statute and provides that the Partnership may be reconstituted only if <u>all Limited Partners</u> vote to continue the Partnership.

7

**C.     Dissolution and Winding Up of the Partnership**

20.     Dissolution is defined as the change in the relationship of the partners caused by any partner ceasing to be associated in the carrying on of the partnership. *Woodruff v. Bryant*, 558 S.W.2d 535, 538-39 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). Dissolution does not necessarily terminate the partnership business. *Id.* at 538-39. Even if the business does not continue, the partnership continues to exist for the limited purpose of winding up. TBOC § 11.052; *Woodruff*, 558 S.W.2d at 539

21.     Because all of the Limited Partners did not vote to continue the Partnership in compliance with the terms of the Agreement, the Equity Group did not have authority to appoint a new General Partner. Therefore, Discovery Trails is not the General Partner of the Partnership, and the Partnership dissolved upon withdrawal of Land Tejas Companies as General Partner. Pursuant to the terms of the Agreement, the dissolved Partnership must terminate and wind up if it is not reconstituted (by a vote of all limited partners) within 90 days.

22.     Presuming that all Limited Partners will not vote to continue the Partnership, the Partnership now exists for the sole purpose of winding up. TBOC § 153.502 states: "<u>Except as provided by the partnership agreement</u>, the winding up of the partnership's affairs shall be accomplished by: (1) the general partner, (2) if there are no general partners, the limited partners or a person chosen by the limited partners; or (3) a person appointed by the court."

23.     Here, Article XIII of the Agreement sets forth specific terms for the winding up of the Partnership.  There are two ways the Partnership may be wound up: (1) by the General Partner, or (2) if the dissolution was caused by the General Partner, by a liquidator or liquidating committee appointed by the Equity Group. Since the dissolution was caused by the removal of the General Partner, a liquidator must be appointed to wind up the Partnership.  Without a vote to reconstitute the Partnership, the only thing the Equity Group was permitted to do under the Agreement was to appoint a liquidator to

wind up and liquidate the Partnership. Any attempt to act on behalf of the Partnership with respect to the bankruptcy case was an *ultra vires* act.

### IV. CONCLUSION

24. No one presently has the authority to act on behalf of the Partnership with respect to the bankruptcy case. The General Partner, which would typically have that authority, was removed as General Partner on or about May 24, 2011. There was no vote of all of the Limited Partners to continue the Partnership, which resulted in dissolution of the Partnership. Even though the Equity Group attempted to appoint Discovery Trails as a substitute General Partner, it did not have the authority to do so because the Partnership had not been reconstituted under the terms of the Agreement and Texas law. Therefore, Discovery Trails is not the General Partner, and did not have authority to act on behalf of the Partnership.

25. While the May 24th letter from the Equity Group states that the "General Partner consents to the election of a substitute general partner," it does not indicate that there was ever a vote to continue the Partnership. If all Limited Partners do not vote before August 24, 2011 (90 days after removal of General Partner) to continue the business of the Partnership, the Partnership will terminate.

26. Assuming that all limited partners do not vote to continue the Partnership, the Partnership is dissolved and will terminate on August 24th. The Partnership must undertake efforts to wind up. The only way the Partnership may wind up after removal of the General Partner is through the appointment of a liquidator. Any actions beyond the appointment of a liquidator, including the actions taken in this case, are ultra *vires acts* and should not be permitted.

27. Discovery Trails is not the General Partner of the Partnership, and it did not have the authority to answer the involuntary petition, consent to an order for relief, or move to convert the case to chapter 11 on behalf of the Debtor. Nor did Discovery Trails have authority to employ Hensley &

9

Krueger as bankruptcy counsel. As such, Forestar respectfully requests that the case be reconverted to one under chapter 7 of the Bankruptcy Code and that the court deny the application to employ Hensley & Krueger as counsel for the Debtor.

Respectfully submitted,

BROWN MCCARROLL, L.L.P.
111 Congress Ave., Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (Fax)
Email:  slemmon@brownmccarroll.com


By:*/s/ Stephen W. Lemmon*
    Stephen W. Lemmon
    Texas Bar No. 12194500
    Kell C. Mercer
    Texas Bar No. 24007668

ATTORNEYS FOR FORESTAR (USA)
REAL ESTATE GROUP, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July, 2011, a true and correct copy of the foregoing pleading was served to all parties via the Court's CM/ECF notification system.

    */s/ Stephen W. Lemmon*
    Stephen W. Lemmon